IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on September 30, 2004

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Criminal No.  CR 05-175 |
| | : | |
| | : | Grand Jury Original |
| v. | : | |
| | : | VIOLATIONS: |
| | : | |
| RICK VAN BRYSON, | : | 18 U.S.C. Sec. 1347 |
| | : | (Health Care Fraud) |
| | : | |
| | : | 18 U.S.C. Sec. 2 |
| Defendant. | : | (Causing An Act to be Done) |

INDICTMENT

The Grand Jury charges that:

RICHARD W. ROBERTS

COUNTS ONE THROUGH EIGHT

MAY 1 2 2005

(Health Care Fraud)

At all times relevant and material to this Indictment:

1. **RICK VAN BRYSON** ("defendant") was a medical doctor licensed to practice medicine as a podiatrist, or foot doctor, in both the District of Columbia and Maryland.

2. **RICK VAN BRYSON** provided medical treatment to patients at offices in both the District of Columbia and Maryland. In addition, **RICK VAN BRYSON** provided podiatry services to elderly patients at their homes and at designated locations with programs for elderly or disabled persons in the District of Columbia.

3.     **RICK VAN BRYSON** treated numerous senior citizen patients who participated in the federal Medicare Program ("Medicare") and often billed Medicare seeking reimbursement for their treatment. **RICK VAN BRYSON** was a Medicare-approved podiatrist, which allowed him to receive reimbursement from Medicare when he provided medical treatment which was reimbursable under Medicare.

4.     Congress established Medicare in 1965 to provide basic medical insurance coverage to individuals 65 years and older and to certain individuals with disabilities. It was designed, in part, to provide a safety net for senior citizens who are sick or ill to ensure that they receive basic medical care. Medicare covers at least part of the cost of specified in-hospital and out-patient medical services, doctors' services, and certain other medical expenses.

5.     Medicare was a "health care benefit program" under federal law. A "health care benefit program" is defined in 18 U.S.C. Section 24(b) as "any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item or service for which payment may be made under the plan or contract." Medicare was a "health care benefit program" because it is a public plan or contract, affecting commerce, under which medical benefits, items and services are provided to individuals.

6.     Medicare was funded primarily through appropriations from the United States Treasury. It was administered by a federal agency within the Department of Health and Human Services known as the Centers for Medicare and Medicaid Services ("CMS"). Prior to July 1, 2001, Medicare was administered by the Health Care Financing Administration ("HCFA").

7. Medicare provided reimbursement to health care institutions and physicians, like **RICK VAN BRYSON**, on a "fee for service" basis under two different Medicare programs. First, Part A of Medicare provided reimbursement for hospital stays and similar related medical services. Second, Part B provided payment for doctors' services, like that provided by **RICK VAN BRYSON**, as well as outpatient hospital services, medical equipment and supplies, and other related services. Part B paid Medicare approved physicians, like **RICK VAN BRYSON**, up to 80% of the cost of reimbursable medical treatment which they provided, with other insurance or patients paying the remaining 20% of the cost of treatment.

8. Medicare promulgated regulations and guidance that provided what medical treatments would be, or would not be, covered by Medicare insurance. Medicare generally did not reimburse podiatrists for providing "routine foot care" to patients, including the clipping, cutting, trimming and debriding of toenails; the cutting or removal of corns or calluses; the cleaning and soaking of the feet; the application of topical medications to the feet; and the use of skin cream to maintain skin tone in either ambulatory or bedridden patients.

9. Medicare required physicians seeking reimbursement to submit claims identifying the medical treatment they had provided to the patient. The service was identified on the claim form, known as a "Form 1500" or "HCFA Form," using a 5 digit code known as a "CPT Code." The CPT Codes were published annually by the American Medical Association in the "CPT Manual" (Current Procedural Terminology Manual). The CPT Manual assigned unique 5 digit CPT codes to thousands of different medical procedures in virtually all medical specialties, including podiatry. Created nearly 40 years ago, the CPT Manual and its 5 digit CPT codes have become the standard shorthand used by physicians to summarize the medical treatment they

provide to patients in medical notes, on medical treatment forms, on billing statements and on medical insurance forms.

10.  When treating patients, physicians, like **RICK VAN BRYSON**, often recorded relevant information concerning their treatment on standard forms known as "super bills" or "service bills." This information included the patient's name and personal information, the diagnosis, the medical treatment provided and the CPT code for that treatment. These "super bills" or "service bills" were used by physicians in many practice areas, including podiatry.

11.  Medicare required that podiatrists provide certain information on their HCFA 1500s including, among other things: (1) the name of the patient; (2) the date(s) the claimed services were provided; and (3) the CPT code for the medical service or treatment provided.

12.  Medicare also required that Medicare approved physicians, like **RICK VAN BRYSON**, certify that they actually provided the services for which they were requesting reimbursement from Medicare.

13.  **RICK VAN BRYSON** knew that Medicare did not reimburse podiatrists for "routine foot care" and similar treatments, absent unique circumstances and special permission, but did reimburse podiatrists for surgical procedures to a Medicare patient's feet.

### The Scheme

14.  From in or about January, 1998, until in or about September, 2001, in the District of Columbia and elsewhere, **RICK VAN BRYSON**, knowingly and willfully executed, and attempted to execute, or caused to be executed, a scheme and artifice to defraud a health care benefit program, namely Medicare, and to obtain from that program money and property owned by, and under the custody or control of Medicare, by means of false and fraudulent pretenses, representations, and promises.

## Purpose of the Scheme and Artifice

15.    It was a purpose of the scheme and artifice to defraud for the defendant, **RICK VAN BRYSON**, to enrich himself by seeking and obtaining insurance payments from Medicare for services that, as he well knew, he had not performed, and to cover up the scheme and the the actions taken in furtherance of it.

## Manner and Means

16.    **RICK VAN BRYSON** submitted, and caused others to submit on his behalf, Medicare claims forms, and related documentation, containing false CPT codes or descriptions of medical treatment which **RICK VAN BRYSON** claimed to have provided when, in fact, he did not provide the treatment to the patient, provided a different treatment, or did not treat that patient at all, including but not limited to the alleged treatment of a patient identified as "NJ" on or about September 17, 1999 and April 28, 2000; the alleged treatment of a patient identified as "JT" on or about May 31 and September 13, 2000; the alleged treatment of a patient identified as "CT" on or about May 31 and September 13, 2000; the alleged treatment of a patient identified as "AG" on or about May 31 and September 13, 2000; the alleged treatment of a patient identified as "CK" on or about October 18, 2000 and July 11, 2001; the alleged treatment of a patient identified as "HG" on or about March 26, 2001; the alleged treatment of a patient identified as "DB on or about September 17, 1999 and the alleged treatment of a patient identified as "DE" on or about April 27, 2001.

17.    **RICK VAN BRYSON** prepared "super bills " or medical forms used by physicians to document their treatment of patients, for certain Medicare patients, on which he recorded false or fraudulent information and then instructed his staff to use that information to prepare HCFA 1500s and to submit a claim for reimbursement to Medicare for that patient's

treatment when he had not in fact performed the procedure for which he was billing Medicare, or **RICK VAN BRYSON** completed HFCA 1500 forms himself using false or fraudulent information in order to get reimbursement for medical treatment which he had not in fact performed.

18.     **RICK VAN BRYSON** completed "superbills" for certain Medicare patients on which he recorded false or fraudulent information indicating that he performed a more advanced medical treatment than he actually performed on the patient.

19.     **RICK VAN BRYSON** submitted to Medicare or caused to be submitted to Medicare on his behalf false and fraudulent claims for Medicare reimbursement seeking payment for medical treatment to certain Medicare patients which he did not provide.

20.     **RICK VAN BRYSON** created false or fraudulent medical notes indicating certain patient complaints about the physical condition of their feet or symptoms they experienced and the corresponding treatment required when, in fact, the patient never complained of that condition, did not have those symptoms and did not receive that treatment.

21.     **RICK VAN BRYSON** created false or fraudulent medical notes in order to have fraudulent documentation in patient records to justify his fraudulent Medicare claims.

### FALSE BILLINGS TO CARRY OUT THE SCHEME

22.     On or about the dates listed below, in the District of Columbia and elsewhere, the defendant, **RICK VAN BRYSON**, caused to be submitted, the following claims for reimbursement for medical treatment or procedures which he did not render:

## COUNT ONE

23.     On or about April 28, 2000, the defendant, **RICK VAN BRYSON**, treated a patient identified as "NJ" at a location in the District of Columbia. On or about May 19, 2000, the defendant, **RICK VAN BRYSON**, submitted a claim for reimbursement to Medicare for the treatment of NJ on April 28, 2000 in which he falsely asserted that he performed CPT Procedure Code 28313 ( "reconstruction, angular deformity of toe, soft tissue procedures only"), a medical procedure which he did not in fact perform.

## COUNT TWO

24.     On or about May 31, 2000 and September 13, 2000, the defendant, **RICK VAN BRYSON**, treated a patient identified as "JT" at a location in the District of Columbia. On or about October 30, 2000, the defendant, **RICK VAN BRYSON**, submitted a claim for reimbursement to Medicare for the treatment of JT on May 31 and September 13, 2000 in which he falsely asserted that he performed CPT Procedure Code 11420 ("excision, benign lesion, except skin tag (unless listed elsewhere), scalp, neck, hands, feet, genitalia; lesion diameter 0.5 cm or less"), a medical procedure which he did not in fact perform.

## COUNT THREE

25.     On or about May 31, 2000 and September 13, 2000, the defendant, **RICK VAN BRYSON**, treated a patient identified as "CT" at a location in the District of Columbia. On or about October 30, 2000, the defendant, **RICK VAN BRYSON**, submitted a claim for reimbursement to Medicare for the treatment of CT on May 31 and September 13, 2000 and falsely asserted that he performed CPT Procedure Code 11420 ("excision, benign lesion, except skin tag (unless listed elsewhere), scalp, neck, hands, feet, genitalia; lesion diameter 0.5 cm or less"), a medical procedure which he did not in fact perform.

## COUNT FOUR

26.     On or about May 31, 2000 and September 13, 2000, the defendant, **RICK VAN BRYSON**, treated a patient identified as "AG" at a location in the District of Columbia. On or about October 30, 2000, the defendant, **RICK VAN BRYSON**, submitted a claim for reimbursement to Medicare for the treatment of AG on May 31 and September 13, 2000 and falsely asserted that he performed CPT Procedure Code 11420 ("excision, benign lesion, except skin tag (unless listed elsewhere), scalp, neck, hands, feet, genitalia; lesion diameter 0.5 cm or less"), a medical procedure which he did not in fact perform.

## COUNT FIVE

27.     On or about October 18, 2000, the defendant, **RICK VAN BRYSON**, treated a patient identified as "CK" at a location in the District of Columbia. On or about November 20, 2000, the defendant, **RICK VAN BRYSON**, submitted a claim for reimbursement to Medicare for the treatment of CK on October 18, 2000 and falsely asserted that he performed CPT Procedure Code 11421 ("excision, benign lesion, except skin tag (unless listed elsewhere) scalp, neck, hands, feet, genitalia; lesion diameter 0.6 to 1.0 cm"), a medical procedure which he did not in fact perform.

## COUNT SIX

28.     On or about March 26, 2001, the defendant, **RICK VAN BRYSON**, treated a patient identified as "HG" at a location in the District of Columbia. On or about April 9, 2001, the defendant, **RICK VAN BRYSON**, submitted a claim for reimbursement to Medicare for the treatment of HG on March 26, 2001, and falsely asserted that he performed CPT Procedure Code 64450 ("introduction/injection of, anesthetic agent (nerve block), diagnostic or therapeutic, other peripheral nerve or branch"), a medical procedure which he did not in fact perform.

8

## COUNT SEVEN

29.     On or about April 27, 2001, the defendant, **RICK VAN BRYSON**, was visiting a location in the District of Columbia to treat other elderly patients when he was approached by an individual identified as "DE." DE asked the defendant, **RICK VAN BRYSON**, when she could meet with him to ask a question concerning her feet. The defendant informed DE that in order to see him, DE would have to fill out a form containing her personal and insurance information. DE filled out the form, but was never seen by the defendant, **RICK VAN BRYSON**, for any medical treatment or services that day. However, DE subsequently received a letter from Medicare indicating that the defendant, **RICK VAN BRYSON**, had billed Medicare for providing medical services to DE on that date. Further investigation revealed that on or about July 26, 2001, the defendant, **RICK VAN BRYSON**, submitted a claim for reimbursement to Medicare for the treatment of DE on April 27, 2001 and falsely asserted that he performed CPT Procedure Code 12001 ("simple repair of superficial wounds of scalp, neck, axillae, external genitalia, trunk and/or extremities (including hands and feet); 2.5 cm or less"), a medical procedure which he did not in fact perform.

## COUNT EIGHT

30.     On or about July 11, 2001, the defendant, **RICK VAN BRYSON**, treated a patient identified as "CK" at a location in the District of Columbia. On or about August 20, 2001, the defendant, **RICK VAN BRYSON**, submitted a claim for reimbursement to Medicare for the treatment of CK on July 11, 2001 and falsely asserted that he performed CPT Procedure Code 12001 ("simple repair of superficial wounds of scalp, neck, axillae, external genitalia, trunk and/or extremities (including hands and feet); 2.5 cm or less"), a medical

procedure which he did not in fact perform.

(Health Care Fraud, in violation of Title 18, United States Code, Sections 2 and 1347)

A TRUE BILL:

FOREPERSON

*Kenneth L. Wainstein / JR*

ATTORNEY OF THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA