UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL NO. 05-0175 (RWR) |
| | : | |
| v. | : | **VIOLATIONS** |
| | : | |
| RICK VAN BRYSON | : | 18 U.S.C. Section 1035 |
| | : | (False Statements Relating to |
| Defendant. | : | Health Care Matters) |
| | : | |
| | : | 18 U.S.C. Section 2 |
| | : | (Causing an Act to Be Done) |

## STATEMENT OF OFFENSE

I, **RICK VAN BRYSON**, submit the following Statement of Offense in support of my

plea in the above-captioned matter. I hereby knowingly, intelligently and voluntarily admit to the

facts stated herein as true and accurate and that they form the basis for my plea in this case:

1.     I am a doctor licensed to practice medicine as a podiatrist in both the

District of Columbia and Maryland.

2.     Since approximately 1989, I have been a Medicare approved physician authorized

to seek reimbursement for treating Medicare patients from the Medicare Program.

3.     Since approximately the early 1990s, I have provided medical advice and

treatment to patients at my offices in both the District of Columbia and Maryland. I have also

provided podiatry services to elderly patients at their homes and at designated locations with

programs for elderly or disabled persons in the District of Columbia.

4.     Since becoming a Medicare approved physician, I have submitted numerous

claims for reimbursement to Medicare, through the local private insurance carrier, TrailBlazer,

and I am very familiar with the Medicare reimbursement process.

     5.     Since becoming a Medicare approved physician, I understand that Medicare reimburses some medical treatments or procedures performed by physicians, including podiatrists, and not others. I have received materials and training instructing me as to which medical procedures performed by a Medicare approved podiatrist are reimbursable and which are not reimbursable.

     6.     As a Medicare approved physician, I have been aware, since at least 1998, that Medicare does not reimburse podiatrists for providing "routine foot care" to patients, including the clipping, cutting, trimming and debriding of toenails; the cutting or removal of corns or calluses; the cleaning and soaking of the feet; the application of topical medications to the feet; and the use of skin cream to maintain skin tone in either ambulatory or bedridden patients. I am aware that Medicare reimburses podiatrists for such treatment only in the very limited situation where it is a necessary and integral part of otherwise covered medical services, or if the patient has a systemic condition such as metabolic, neurologic, or peripheral vascular disease in their feet or legs.

     7.     As a physician, I am familiar with the CPT codes used by podiatrists on "superbills" and Medicare claims forms. These CPT Codes - which are published in the Current Procedural Terminology Manual by the American Medical Association - are 5 digit codes used to assign thousands of different medical treatments and procedures.

8.      As a Medicare approved physician, I have, on a number of occasions, either

prepared and submitted HCFA 1500 Medicare Claims forms to Medicare for reimbursement, or

provided "superbills" to my staff, which I completed after treating patients, and then directed my

staff to use the information I wrote or recorded on the "superbill," including the CPT Code I

wrote or recorded for the medical procedure I claimed to have performed, to prepare and submit a

Medicare claim for reimbursement.

9.      I admit that, from sometime in approximately 1998 until in or about September,

2001, in the District of Columbia and elsewhere, I knowingly and willfully devised and executed

a scheme and artifice to defraud a health care benefit program, namely Medicare, and to obtain

from that program money owned by or under the custody or control of Medicare, by means of

false or fraudulent pretenses, representations, or promises. while knowing that the pretenses,

representations, and promises would be and were false when made, as set forth more fully below.

10.     I admit that I engaged in this scheme to defraud Medicare in order to obtain

money for my personal benefit.

11.     I admit that, as part of this scheme, I provided elderly patients with routine

footcare on several occasions, knowing that it was not reimbursable from Medicare, but

nevertheless prepared. or directed my staff or employees to prepare, HCFA 1500 Medicare

claims forms for those patients falsely and fraudulently asserting that I had performed a

reimbursable medical procedure, such as foot surgery, and I directed my staff to submit these

- 3 -

HCFA 1500 Medicare claims forms containing false, material information to Medicare in order to seek reimbursement.

12.     I admit that, on at least one occasion, I submitted a claim to Medicare for treating a Medicare patient on a given date when I never actually treated that patient on that date.

13.     I admit to, and acknowledge, that I knowingly and intentionally committed the acts alleged in the Information presented to this court. I specifically acknowledge engaging in the following conduct in which I knowingly and intentionally submitted false and fraudulent information in HCFA 1500, or Medicare reimbursement forms, to Medicare, in order to get reimbursement from Medicare for medical treatment or procedures which I did not perform. These include the following:

14.     On or about April 28, 2000, I treated a patient identified as "NJ" at a location in the District of Columbia. On or about May 19, 2000, I submitted a fraudulent claim for reimbursement to Medicare for the treatment of NJ on April 28, 2000 in which I knowingly and willfully falsely asserted that I performed CPT Procedure Code 28313 ("reconstruction, angular deformity of toe, soft tissue procedures only"), a medical procedure which I did not perform on NJ on that date.

15.     On or about May 31, 2000 and September 13, 2000, I treated a patient identified as "JT" at a location in the District of Columbia. On or about October 30, 2000, I submitted a fraudulent claim for reimbursement to Medicare for the treatment of JT on May 31 and September 13, 2000 in which I knowingly and willfully falsely asserted that I performed CPT

Procedure Code 11420 ("excision, benign lesion, except skin tag (unless listed elsewhere), scalp,
neck, hands, feet, genitalia; sesion diameter 0.5 cm or less"), a medical procedure which I did not
in fact perform on JT on those dates.

16.    On or about May 31, 2000 and September 13, 2000, I treated a patient identified
as "CT" at a location in the District of Columbia.   On or about October 30, 2000. I submitted a
fraudulent claim for reimbursement to Medicare for the treatment of CT on May 31 and
September 13, 2000 and knowingly and willfully falsely asserted that I performed CPT
Procedure Code 11420 ("excision. benign lesion, except skin tag (unless listed elsewhere), scalp,
neck, hands, feet, genitalia; sesion diameter 0.5 cm or less"), a medical procedure which I did not
in fact perform on CT on those dates.

17.    On or about May 31, 2000 and September 13, 2000, I treated a patient identified
as "AG" at a location in the District of Columbia.    On or about October 30, 2000, I
submitted a fraudulent claim for  reimbursement to Medicare for the treatment of AG on May 31
and September 13, 2000 and knowingly and willfully falsely asserted that I performed CPT
Procedure Code 11420 ("excision, benign lesion, except skin tag (unless listed elsewhere), scalp.
neck. hands, feet, genitalia; sesion diameter 0.5 cm or less"), a medical procedure which I did not
in fact perform on AG on those dates.

18.    On or about October 18, 2000, I treated a patient identified as "CK" at a location
in the District of Columbia. On or about November 20, 2000, I submitted a fraudulent claim for
reimbursement to Medicare for the treatment of CK on October 18, 2000 and knowingly and
willfully falsely asserted that I performed CPT Procedure Code 11421 ("excision, benign lesion,

except skin tag (unless listed elsewhere) scalp, neck, hands, feet, genitalia; lesion diameter 0.6 to 1.0 cm"), a medical procedure which I did not in fact perform on CK on that date.

19.    On or about March 26, 2001, I treated a patient identified as "HG" at a location in the District of Columbia. On or about April 9, 2001, I submitted a fraudulent claim for reimbursement to Medicare for the treatment of HG on March 26, 2001, and knowingly and willfully falsely asserted that I performed CPT Procedure Code 64450 (" introduction/injection of, anesthetic agent (nerve block), diagnostic or therapeutic, other peripheral nerve or branch"), a medical procedure which I did not in fact perform on HG on that date.

20.    On or about April 27, 2001, I was visiting a location in the District of Columbia when I was approached by an individual identified as "DE." DE asked me a question about when DE could arrange an appointment or visit with me. I informed DE that DE would have to fill an insurance form in order to see me. DE filled out the form, but I did not see her that day for any medical treatment or services. Nevertheless, on July 26, 2001, I subsequently falsely submitted a claim for reimbursement to Medicare for providing medical treatment to DE on that date. In the fraudulent claim, I sought reimbursement from Medicare for performing CPT Procedure Code 12001 ("simple repair of superficial wounds of scalp, neck, axillae, external genitalia, trunk and/or extremities (including hands and feet); 2.5 cm or less"), a medical procedure which I did not perform on DE on that date.

21.    On or about July 11, 2001, I treated a patient identified as "CK" at a location in the District of Columbia. On or about August 20, 2001, I submitted a fraudulent claim for reimbursement to Medicare for the treatment of CK on July 11, 2001 and knowingly and

- 6 -

willfully falsely asserted that I performed CPT Procedure Code 12001 ("simple repair of superficial wounds of scalp, neck, axillae, external genitalia, trunk and/or extremities (including hands and feet); 2.5 cm or less"), a medical procedure which I did not perform on CK on that date.

22.    I acknowledge all of the above facts and that I knowingly and willfully engaged in the conduct alleged in the Information in violation of 18 U.S.C. Sections 1035 and 2 by knowingly and willfully making false statements concerning material facts in a matter involving a health care benefit program, namely Medicare, in connection with the delivery of or payment for health care benefits, items or services, namely, in order to obtain funds from Medicare, on a number of occasions between 1998 and 2001.

## ACKNOWLEDGEMENT OF DEFENDANT

I have read this Statement of Offense and have discussed it with my attorney, Tony Miles, Esq. I fully understand this agreement and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this agreement fully. I am pleading guilty because I am in fact guilty of the offense identified in this Statement of Offense.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this plea agreement. I am satisfied with the legal services provided by my attorney in connection with this plea agreement and matters related to it.

Date: _Q-/7-05_

Rick Van Bryson
Defendant

- 7 -

I have read each page of this Statement of Offense, reviewed them with my client, and discussed the provisions of the Plea Agreement with my client, fully. These pages accurately and completely set forth the entire Statement of Offense. I concur in my client's desire to plead guilty and to acknowledge the facts contained in this Statement of Offense and the corresponding Plea Agreement.

Date: ___8|17|05___

___Tony W. Miles___
Tony Miles
Counsel for Defendant Rick Van Bryson

- 8 -