**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CRIMINAL NO.  05-0175 (RWR)** |
| | : | |
| **v.** | : | |
| | : | |
| **RICK VAN BRYSON,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |
| _____ | : | |

**GOVERNMENT'S SUPPLEMENTAL MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District

of Columbia, submits this supplemental sentencing memorandum to address the issue of the

"amount of loss" at sentencing.  The defendant has challenged the Government's loss calculation

in his sentencing memorandum.  In response, and to expedite the sentencing proceeding for the

Court, the Government hereby details the loss calculation which it expects to prove by a

preponderance of the evidence at sentencing.  The Government also recommends that the Court

decide the "more than miminal planning" issue first because it will determine whether the 2000

or 2004 Sentencing Guidelines Manual apply and the precision with which the Court must

determine the loss amount.

      I.      The Court Should First Resolve the Issue of "More than Minimal Planning"
              In Order to Determine Which Sentencing Guidelines Manual to Apply

The Government suggests that the Court address the issue of "more than minimal

planning" first.  The PSR applies this specific offense characteristic in its sentencing calculation

under the 2000 Guidelines Manual, whereas the Government and the defendant did not include it

in their sentencing calculation in the Plea Agreement.  Specifically, in the Plea Agreement, the

Government and the defendant did not add a two level enhancement for "more than minimal planning" under Section 2F1.1(b)(2)(A) of the 2000 Sentencing Guidelines.  As a result, and given that the parties agree that the loss amount is in the range of $20,000 to $40,000, regardless of the exact amount, the parties sentencing calculation in the Plea Agreement is a total offense level of Level 8 (Zone A)(0-6 months).

By contrast, the PSR does include a "more than minimal planning" enhancement under Section 2F1.1(b)(2)(A) of the 2000 Guidelines.  As a result, with the two level enhancement, the PSR computes a total offense level of Level 10 rather than the Plea Agreement's Level 8 under the 2000 Guidelines (Zone B)(6-12 months).  Then the PSR looks to the 2004 Guidelines in which, while the "more than minimal planning" enhancement has been eliminated, the enhancement for loss amount of $20,000 to $40,000 also no longer exists.  Instead, under Section 2B1.1 of the 2004 Guidelines,  a loss amount of $20,000 to $30,000 produces a four level enhancement whereas a loss amount of $30,000 to $40,000 produces a six level enhancement. This makes the agreement between the Government and the defendant that the loss amount is between $20,000 and $40,000 meaningless, and the difference in calculation between the Government's loss amount of approximately $37,000 and the defendant's loss amount of $20,050.40 important.

Given these facts, and the PSR's acceptance of the Government loss amount of approximately $37,000, the PSR computes a total offense level of Level 10 under the 2004 Guidelines.  Thus, the PSR concludes that since both the 2000 and 2004 Guidelines produce the same result, there is no ex post facto issue and, pursuant to Section 1B1.11 of the 2004 Manual,

the Court should apply the Guidelines in effect at the time of sentencing, the 2004 Manual.

By addressing the "more than minimal planning" issue first, the Court can make an initial determination as to whether  the 2000 or the 2004 Guidelines Manual applies.   If the Court finds that "more than minimal planning" does apply, the Court will presumably reach the same conclusion as the PSR, that is, that no ex post facto issue exists, and apply the 2004 Guidelines if the Court agrees with the Government's loss amount.  The amount of loss issue under the 2004 Guidelines will then be ripe.  The Court will then have to determine whether the loss amount is approximately $37,000, as the Government suggests, and give the defendant a six level enhancement, or approximately $20,000, as the defendant suggests, and give the defendant a four level enhancement under Section 2B1.1(b)(1).

If the Court finds that "more than minimal planning" does not apply under the 2000 Guidelines, then the Court would presumably find that the sentencing calculation under the 2000 Guidelines was a Level 8, not a Level 10, and the ex post facto concern would lead the Court to apply the 2000 Guidelines.  In that case, since any loss amount between $20,000 and $40,000 would produce the same result, a four level enhancement, the Court would not need to determine loss amount with as much specificity or the parties could stipulate that the loss amount is in that range and the Court could sentence the defendant to a Level 8 sentence under the 2000 Guidelines.

II.    The Government Calculates a Loss Amount of Approximately $37,000
       Based on Four Components of Loss in this Case

The Government calculates a loss amount of approximately $37,000 based on four components of loss in this case.  These calculations use the actual loss, or actual payment amounts, made by Medicare to the defendant for reimbursements on fraudulent Medicare claims made by the defendant as part of his scheme to defraud.

The defendant claims a loss amount of $20,050.40.  This appears to be based on a communication from a prior Assistant U.S. Attorney (AUSA) to prior defense counsel, before the Indictment was returned or the defendant entered into the Plea Agreement based on an Information.  While there was discussion between the current counsel concerning loss amount prior to the Plea Agreement, the only agreement between the parties is, as the Plea Agreement states, that the loss amount is more than $20,000 and, the Government submits based on the discussions between the parties, that it was anticipated by the parties that the loss amount would be no more than $40,000, i.e., in the $20,000 to $40,000 range.   The current AUSA hereby attaches a chart from the Government's file detailing some of the basis for the $20,050.40 amount used by the defendant.  The Government's copy of the chart is incomplete, but the undersigned AUSA has asked the lead agent to bring the entire chart to sentencing.  See Government Exhibit # 1.

The Government bears the burden of proving the amount of loss at sentencing by a preponderance of the evidence. U.S. v. Singh, 390 F.3d 168, 191 (2d Cir. 2004), citing U.S. v. Watts, 519 U.S. 148, 149 (1997); see also U.S. v. Miller, 901 F. Supp. 371, 375 (D.D.C. 1995)

- 4 -

Application Note 3 to Section 2B1.1 (2004 Guidelines Manual) provides that "loss is the greater of actual loss or intended loss."   "Actual loss" is defined in the same note as "the reasonably foreseeable pecuniary harm that resulted from the offense."  "Intended loss" is defined to include "the pecuniary harm that was intended to result from the offense."  U.S.S.G. Section 2B1.1, Application Note 2(A)(i) and (i)(2004 Guidelines).

_____The Government submits that the "actual loss" and "intended loss" are essentially the same in this case.   Since the defendant, Dr. Bryson, was approved as a Medicare physician in 1989, he was very familiar with Medicare, its reimbursable codes and its reimbursement rates by the time this scheme began in 1998.  He therefore knew that when he billed Medicare for services, he would received a proscribed actual payment for each service and expected to receive that amount.

_____The actual loss to the Government for the time period in this case, from approximately January, 1998 through September, 2001, is $37,132.61.[1]  See Government Exhibit # 2 (Summary Spreadsheet of Total Loss Amount in Date Order) and Government Exhibit # 3 (Summary Spreadsheet of Total Loss Amount in Alphabetical Order by Patient).   This includes the following loss amounts:

---

[1]   The Government submitted to the Court a slightly higher loss amount of $37,417.34 in its Memorandum in Aid of Sentencing.  However, as of November 2, 2005, the AUSA asked the lead agent  in this case, HHS Special Agent Jason Marrero, to prepare a new loss calculation, being sure not to include any loss amount not within the period of the scheme admitted by the defendant in his Statement of Offense, that is, from 1998 until in or about September, 2001.  The lead agent did so and concluded that the appropriate loss number is actually $37,132.61.

(1) <u>The Original Indictment</u> - The first component of the Government's loss calculation is the actual loss - i.e. actual Medicare payments to the defendant based on Medicare records - for the treatment of 7 patients identified in the Statement of Offense.  It includes 13 separate dates of treatment for these patients during the scheme to defraud period.  This includes the 11 specific occasions of treatment of these 7 patients as detailed in the Statement of Offense and 2 additional dates of treatment for the same patients which also occurred during the scheme period.  The actual loss calculation for this component is $1,743.64.

In his Statement of Offense, the defendant specifically acknowledged fraudulently billing Medicare, that is, making false statements related to a health care matter under 18 U.S.C. Section 1035, for each of these 7 patients.  In addition, a Government retained expert podiatrist, Dr. Michael Theodoulou, physically examined four of these patients as well as reviewing their medical records and concluded that "[w]ithout question, there is evidence of duplicity and fraud in the management and billing of these individuals."  <u>See</u> Government Exhibit # 4.  A spreadsheet supporting this loss calculation is attached and, if necessary, HHS Special Agent will be available at sentencing to testify to this computation before the Court.  <u>See</u> Government Exhibit # 5.

(2) <u>The Review by Dr. Paul Kinberg (Expert Podiatrist)</u> - The second component of the Government's loss calculation is based on the review of a number of the defendant's patient files by Dr. Paul Kinberg, an expert podiatrist retained by the Government in this case. Dr. Kinberg is under contract to HHS to review records in Medicare fraud cases.  Dr. Kinberg reviewed a number of the defendant's patient files in this case and made determinations as to whether the

medical records and notes contained in those files were sufficient to, consistent with or

substantiated Medicare claims made by Dr. Bryson.  Dr. Kinberg concluded, in a number of cases

during the time period of the defendant's misconduct, from 1998 through September 2001, that

the defendant failed to sufficiently or properly document alleged Medicare reimbursable

treatment, and/or wrote notes or otherwise possessed files containing information completely

inconsistent with the treatment for which he billed Medicare.  The actual loss calculation for this

component is $2,281.81.  A report by Dr. Kinberg and a summary spreadsheet of actual loss

attributed to files for which Dr. Kinberg questioned the Medicare billing is attached.  See

Government Exhibit

# 6 (Dr. Kinberg Report) and # 7 (Summary Chart of Actual Loss Per Dr. Kinberg).

(3) Patient File Review - No Medical Notes - The third component of the Government's

actual loss calculation involves a review of files by agents in this case which determined that,

despite standard medical practice and a Medicare program requirement that physicians properly

document any medical treatment for which reimbursement is sought, the defendant had literally

no medical notes in the patient's file.  The actual loss calculation for this component is

$1,114.46. See Government Exhibit # 8. (Summary of Actual Loss Where No Notes).

(4) HHS Survey/Agent Interviews - The fourth component of the Government's actual

loss calculation involves a calculation of Medicare submissions during the scheme period where

the patient either told an HHS agent during an interview or indicated in writing in an HHS survey

that he or she did not receive the type of treatment for which the defendant billed Medicare.  A

sample of the HHS survey which was used by the agent, was mailed to patients and which was

mailed back to the HHS Agent is attached.  <u>See</u> Government Exhibit # 9.  The total actual loss

calculation for this component is $ 33,736.34 (Summary of Actual Loss Where HHS

Survey/Agent Interviews).

<u>**CONCLUSION**</u>

The Government submits that the Court should make a finding at sentencing that the

actual loss amount in this case is $37,132.61.  The Court should then determine whether the

defendant falls within a Level 8 or Level 10, under either the 2000 or 2004 Guidelines Manual,

and sentence the defendant to a probationary sentence which includes a period of home detention

as well as imposing other appropriate sentencing conditions.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY

_____
JAMES G. FLOOD
Assistant United States Attorney
For the District of Columbia
555 4th Street, N.W., Room 5428
Washington, D.C. 20530
(202) 514-7131

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a copy of the foregoing Government's Memorandum in Aid of
Sentencing has been served by facsimile on counsel for the defendant, Tony W. Miles, Esq.,
Federal Public Defender Service, 625 Indiana Avenue, N.W., Suite 550, Washington, D.C. 20004
on this ____ day of November, 2005.

_____
JAMES G. FLOOD
ASSISTANT U.S. ATTORNEY

- 8 -