IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CRIMINAL NO. 05-175 (RWR) |
| | : | |
| RICK VAN BRYSON | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S SUPPLEMENTAL
MEMORANDUM IN AID OF SENTENCING**

Defendant Rick Van Bryson, through counsel, respectfully submits the following response to the government's Supplemental Memorandum in Aid of Sentencing to further address issues regarding the proper loss amount in this case. In its Supplemental Memorandum, the government attempts to offer support for its position that the proper loss amount in this case is approximately $37,000. But, when reviewing the methods used by the government to arrive at the approximate $37,000 figure, it is clear that the government's calculations are based on serious errors. For instance, the government does not exclude from its loss calculations certain payments which must be excluded according to the United States Sentencing Guidelines (U.S.S.G.). Additionally, the portion of the government's investigation which is allegedly based on patient interviews is unreliable. Due to such serious flaws, the government has not sustained its burden of proving that the correct loss amount in this case is approximately $37,000.

**ARGUMENT**

I. **THE GOVERNMENT'S LOSS CALCULATION IS INCORRECT BECAUSE THE GOVERNMENT FAILED TO EXCLUDE FROM ITS LOSS CALCULATION PAYMENTS WHICH MR. BRYSON WAS ENTITLED TO RECEIVE.**

Mr. Bryson defrauded Medicare in two general ways. On some occasions, Mr. Bryson submitted claims for reimbursement to Medicare for the performance of reimbursable services when he, in fact, did not provide any service which was reimbursable by Medicare (e.g. "routine foot care"). On other occasions, Mr. Bryson submitted claims for reimbursement to Medicare for the performance of services that were reimbursable by Medicare at a rate greater than the rate for which Medicare would reimburse Mr. Bryson for the service he actually performed. With respect to the occasions where Mr. Bryson submitted a claim for reimbursement for the performance of a reimbursable service when he did not provide a service for which he was entitled any reimbursement, the entire amount of money Mr. Bryson received (or attempted to receive) from Medicare on each such claim is calculated toward the loss amount. But, with regard to instances where Mr. Bryson was entitled to some reimbursement by Medicare and he fraudulently received (or attempted to receive) an amount greater than that to which he was entitled, the amount of loss for each such claim is limited to the difference between the amount Mr. Bryson received and the amount he should have received.

Under the U.S.S.G., loss is undoubtedly limited to the difference between what Mr. Bryson received and what he should have received for all fraudulent claims where Mr. Bryson was legitimately entitled to some reimbursement. According to U.S.S.G. § 2B1.1, Application Note 3(A), subject to some exclusions, "loss is the greater of the actual loss or intended loss." Actual loss is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense" and intended loss is "the pecuniary harm that was intended to result from the offense. . ." U.S.S.G. § 2B1.1,

Application Note 3(A)(i) & (ii).  Under this definition, because the harm to the government is only the amount it overpaid Mr. Bryson, the pecuniary harm (actual and intended) is clearly limited to the difference between what Mr. Bryson was paid and what he should have legitimately been paid for his services.  The following example which applies to cases involving government benefits and is provided in the Application Notes of the Sentencing Guidelines makes this point very clear: "...if the defendant was the intended recipient of food stamps having a value of $100 but fraudulently received food stamps having a value of $150, loss is $50."  U.S.S.G. § 2B1.1, Application Note 3(F)(ii).

When calculating loss in this case,  the government does not limit the loss to the difference between the amount Mr. Bryson received and what he should have received with regard to occasions where Mr. Bryson performed a service for which he was entitled some reimbursement.  Rather, the government simply and erroneously attributes all money paid to Mr. Bryson in connection with a fraudulent claim toward the total loss amount.  Based on this reason alone, the government's loss calculation is extremely unreliable and excessive.

II.   **THE GOVERNMENT'S LOSS CALCULATION IS INCORRECT BECAUSE THE GOVERNMENT'S LOSS ESTIMATE IS BASED LARGELY ON ALLEGED PATIENT INTERVIEWS WHICH ARE UNRELIABLE.**

The government relies heavily on alleged patient interviews in determining that the loss amount in the instant case is approximately $37,000.  In its Supplemental Memorandum in Aid of Sentencing, the government estimates that the total loss amount based on HHS surveys and agent interviews is $33,736.34.  Government's Supplemental Memo at 8.  The government's loss calculation due to HHS surveys and interviews are based on situations "where the patient either told an HHS agent during an interview or indicated in writing in an HHS survey that he or she did not

receive the type of treatment for which the defendant billed Medicare." Id. at 7.

One major problem the defense uncovered with respect to the alleged agent interviews in this case is that some of the allegedly interviewed patients were apparently never interviewed. Based on interviews recently conducted by an investigator with the Office of the Federal Public Defender, at least two patients who are repeatedly listed in the government's loss spreadsheet[1] as having been interviewed were never interviewed by HHS, Medicare or by anyone else acting on the government's behalf. Patient Martha Feggins, for instance, stated that she was not interviewed by anyone from HHS, Medicare or from any other government entity about any matters concerning Mr. Bryson's case. Hope Settles made a similar statement regarding her son Darryl Settles. Ms. Settles advised that Darryl Settles, who suffers from a mental illness, was not interviewed by anyone from HHS, Medicare or from any other government entity about any matters concerning Mr. Bryson's case. The statements made by these two individuals regarding the alleged patient interviews call into serious question the reliability of the government's investigation which supports its $37,000 loss figure.

Another problem with the government's alleged agent interviews and the HHS surveys is that the government relies too heavily on the unchallenged memories of patients and on how non-medical professionals define their medical treatment. The government has not satisfactorily shown that it made assurances that all information it received from interviewed and surveyed patients was accurate and reliable. The government has also not satisfactorily shown that all interviewed and surveyed patients could consistently and reliably answer all questions with their limited knowledge regarding medical procedures and terms. This government's failure in this regard further discredits the

---

[1] The government's loss spreadsheet is attached to the government's Supplemental Memorandum in Aid of Sentencing.

credibility of their $37,000 loss calculation.

## CONCLUSION

For all of the reasons discussed above, this Court should find that the government has not satisfied its burden with respect to proving that the loss amount in this case is approximately $37,000. The defense submits that a loss amount of slightly more than $20,000 is a more reasonable and accurate estimate of the total loss in this case.

Respectfully submitted,
A.J. Kramer
Federal Public Defender


_____/s/_____
Tony W. Miles
Assistant Federal Public Defenders
625 Indiana Avenue, N.W.
Washington, D.C. 20004
(202) 208-7500