**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL NO.  05-0175 (RWR) |
| | : | |
| v. | : | |
| | : | |
| RICK VAN BRYSON, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| _____ | : | |

**GOVERNMENT'S SECOND SUPPLEMENTAL SENTENCING MEMORANDUM**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, submits this second supplemental sentencing memorandum solely to address questions raised by the Court at the sentencing hearing on November 3, 2005.

At that hearing, the Court asked the Government to provide additional information on two issues - (1) the Medicare statistician's computation of loss amount in this case, known as the "overpayment projection;" and (2) the disparity between the Government's original loss amount of $37,417.34 and the loss amount of $37,132.61 contained in the Government's Supplemental Sentencing Memorandum, a difference of $284.73.

First, the Government has attached the Medicare statistician's "overpayment projection" and a letter from Medicare contractor TriCenturion to U.S. Probation Officer Shari McCoy, dated November 3, 2005. See Exhibit # 1.  On behalf of Medicare, TriCenturion asserts that the loss amount in this case is the "overpayment  projection" of  $139,511.96, minus $15,850.15 held  in escrow by Medicare from the defendant, for a total loss amount or restitution owed by the defendant of $123,661.81.  The Government does not advocate this loss amount, but rather,

submits this information in response to the Court's inquiry and admonition, at the November 3

sentencing, that the Court wants and will consider all relevant conduct, including all evidence

pertaining to loss amount in this case.  The Government reiterates that neither the Government

nor the defendant are proffering this loss amount to the Court.

Rather, the Government submits to the Court, consistent with the Plea Agreement, that

the proper loss amount is $37,132.61 based on four components of actual loss cited in the

Government's Supplemental Sentencing Memorandum filed on November 2, 2005.  These

include (1) Medicare payments to the defendant for fraudulent Medicare claims for 7 patients

admitted to by the defendant in the Statement of Offense; (2) Medicare payments to the

defendant for fraudulent Medicare claims based on medical records reviewed by a Medicare

expert witness podiatrist, who found serious deficiencies in these records, consistent with the

scheme admitted to by the defendant in the Statement of Offense; (3) Medicare payments to the

defendant for fraudulent Medicare claims where the patient files had insufficient, incomplete or

inconsistent notes for the Medicare billing, consistent with the scheme admitted to in the

Statement of Offense; and (4) Medicare payments to the defendant for fraudulent Medicare

claims for patients who told HHS in patient written surveys or oral interviews that they never

received the services for which the defendant billed Medicare, again consistent with the scheme

admitted to by the defendant in the Statement of Offense..

Second, the Court also asked the Government to explain the discrepancy between the loss

amount set forth in the Government's Sentencing Memorandum filed on October 28, 2005

($37,417.34) and the corrected amount set forth in the Government's Supplemental Sentencing

Memorandum filed on November 2, 2005 ($37,132.61).  The Government stated in footnote 1 on

page 5 of the Supplemental Memorandum that this $284.73 difference appeared to be attributable

to the exclusion of fraudulent Medicare claims outside the period of the scheme admitted to by

the defendant in his Statement of Offense, i.e., from 1998 (January) through September, 2001.

A close review of the loss data provided by the lead agent to the undersigned AUSA in

this case reveals that the $284.73 discrepancy is indeed primarily based on the exclusion of

Medicare claims by the defendant made outside the time period of the scheme admitted by the

defendant in the Statement of Offense, from 1998 through September, 2001.  However, the

discrepancy is not based on one or two Medicare submission exclusions, but rather on a number

of mostly exclusions which changed in the loss amount calculated for three out of the four

underlying components of loss used by the Government in this case.   In short, the Government's

total loss amount for these component categories changed between the original charts prepared

by the lead agent and used for the Government's Sentencing Memorandum, and the revised

charts prepared by the lead agent and used for the Government's Supplemental Sentencing

Memorandum which were intended to limit the loss calculation to the period of the scheme

admitted to by the defendant in the Statement of Offense.  The Government hereby submits to the

Court the bases used by the Government to calculate the original $37,417.34 loss amount and the

revised $37,132.61 loss amount and explains the difference between the two.

Both the original loss amount and the revised loss amount were calculated using the same

four basic components of actual loss used by the Government in this case and described above.

These include, as explained above, (1) Medicare payments made to the defendant for the 7

patients for which he admitted fraud in the Statement of Offense; (2) Medicare payments made to

the defendant for Medicare submissions and patient files reviewed by expert podiatrist, Dr. Paul

Kinberg;  (3) Medicare payments made to the defendant for patients whose medical files

contained no notes corroborating the treatment for which Medicare was billed; and (4) Medicare

payments made to the defendant for patients who indicated to HHS special agents, either in

personal interviews or in written surveys, that they did not receive the type of treatment for which

which the defendant billed Medicare.

The original $37,417.34 was calculated using these same four components of actual loss.

The calculations were based on the following Medicare payments to the defendant for these four

categories - (1) Component # 1 - the fraudulent billing of the 7 patients in the Statement of

Offense - $1,743.64 loss amount.  This number is the same for both the original and revised

Government loss calculations. (2) Component # 2 - the loss amount attributable to the review of

medical records by expert podiatrist, Dr. Paul Kinberg - $4,562.46. The Government has attached

the original chart produced by the lead agent which forms the basis for the original calculation of

this  number.  See Exhibit # 2.  The Government has also attached the chart used for the

corrected number of $2,281.81,which was  used in the Supplemental Sentencing Memorandum

and attached as Exhibit # 7 to that pleading as well.  Id..  A review of the two charts suggests that

the reduction of $2,280.65 appears directly linked to the elimination of patient files reviewed by

Dr. Kinberg where the treatment was outside the conspiracy period from January, 1998 to

September, 2001. (3) Component # 3 - loss amount attributable to no notes - $2,122.85.  The

Government has attached the original chart which produced this number.  See Exhibit # 3. The

chart used for the corrected number of $1,114.46 is also attached.  Id.  Here, some of the

recalculation is based on the exclusion of patients outside of the scheme period of January, 1998

through September, 2001.  But some patients within this period also seem to have been

mistakenly eliminated from the original chart, thus reducing the loss amount further.  This

possible error is in favor of the defendant because it lowers the loss amount for this component.

(4) Component # 4- loss amount based on HHS interviews or surveys - $28,148.27 .  The

Government has not located the original chart for this loss amount calculation.  See Exhibit # 4.

However, the chart used for the corrected number of $33,736.34, which was attached as Exhibit #

9 to the Government's Supplemental Sentencing Memorandum,  is also attached.  Id.

This is clearly the largest component of actual loss..  The Government submits that it is

wholly appropriate to use this number to calculate loss amount because the basis for this number

is a statement or statements by Medicare patients indicating that they did not receive the exact

treatment or type of treatment for which Medicare was billed.

The Government will be prepared to put on evidence at the sentencing hearing on

December 6, 2005 to meet its burden of proving the loss amount in this case.

## CONCLUSION

The Government submits that the Court should make a finding at sentencing that the

actual loss amount in this case is $37,132.61.  The Court should then determine whether the

defendant falls within a Level 8 or Level 10, under either the 2000 or 2004 Guidelines Manual,

and sentence the defendant to a sentence within the Guideline range calculated by the Court.

The sentence should include a period of home detention as well as the imposition of other appropriate sentencing conditions.

<div style="margin-left: 45%;">

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY

_____
JAMES G. FLOOD
Assistant United States Attorney
For the District of Columbia
555 4th Street, N.W., Room 5428
Washington, D.C. 20530
(202) 514-7131

</div>

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Government's Second Supplemental Sentencing Memorandum has been served by facsimile on counsel for the defendant, Tony W. Miles, Esq., Federal Public Defender Service, 625 Indiana Avenue, N.W., Suite 550, Washington, D.C. 20004 on this _____ day of November, 2005.

<div style="margin-left: 45%;">

_____
JAMES G. FLOOD
ASSISTANT U.S. ATTORNEY

</div>